UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
LYNDA G. DODD,

                              Plaintiff,              17 Civ. 9932 (PAE)

        - against -
                                                      SECOND AMENDED
THE CITY UNIVERSITY OF NEW YORK,                      COMPLAINT
VINCENT BOUDREAU, BRUCE CRONIN,
PAUL OCCHIOGROSSO, MARY ERINA                         PLAINTIFF DEMANDS
DRISCOLL, KEVIN FOSTER, JOHN KRINSKY,                 A TRIAL BY JURY
RAJAN MENON, and VIVIEN TARTTER,


                              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

        Plaintiff Lynda G. Dodd ("Dodd" or "plaintiff"), through her attorneys, Vladeck,

Raskin & Clark, P.C., complains of defendants the City University of New York ("CUNY"), Vincent

Boudreau ("Boudreau"), Bruce Cronin ("Cronin"), Paul Occhiogrosso ("Occhiogrosso"), Mary Erina

Driscoll ("Driscoll"), Kevin Foster ("Foster"), John Krinsky ("Krinsky"), Rajan Menon ("Menon"),

and Vivien Tartter ("Tartter") (collectively "individual defendants" and collectively with CUNY,

"defendants"), as follows:

                          NATURE OF THE ACTION

        1.      After the City College of New York ("CCNY") conducted a national search,

in June 2009 CCNY recruited Dodd to serve as the Joseph H. Flom Professor of Legal Studies,

supervising and providing the academic foundation for a newly created pre-law program.  Dodd is

a political scientist with a law degree who focuses her research on remedies for civil rights

violations.  When she chose her research agenda, she had no idea that her employment at CCNY

would force her to experience first-hand the challenges faced by victims of unlawful

discrimination.

2.      After Dodd was diagnosed with multiple sclerosis ("MS"), CCNY subjected her to special procedures and heightened standards.  Her efforts to obtain a reasonable accommodation of additional time to complete her research were met with hostility and obstruction, with no effort to engage in the required interactive process.  She repeatedly had to appeal biased non-reappointment votes.  Even after CCNY's Dean of Diversity, Compliance, and Faculty Relations found that Dodd's chair had discriminated and retaliated against Dodd and the current President retaliated against Dodd, CCNY took no steps to rectify the unlawful conduct.  Dodd was forced to hire an attorney and threaten legal action to obtain accommodations.  CCNY, however, breached the agreement and allowed ongoing retaliation.  In fall 2017/winter 2018, CCNY committees voted to deny Dodd early tenure and then decided not to reappoint her for the next academic year, despite Dodd producing scholarship that is greatly admired by senior scholars in her field.  In April 2018, the President ratified the denial of tenure and non-reappointment.

3.      Plaintiff brings this action to remedy defendants' retaliation after June 8, 2016 for opposing unlawful employment practices, in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq. (the "Rehabilitation Act"); the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. (the "ADA"); the New York State Human Rights Law, Executive Law § 290 et seq. (the "Executive Law"); and the New York City Human Rights Law,  New York City Administrative Code § 8-101 et seq. (the "City Law").

4.      Plaintiff seeks injunctive relief and declaratory relief, compensatory and punitive damages, and other appropriate legal and equitable relief pursuant to the Rehabilitation Act, the ADA, the Executive Law, and the City Law.

<u>JURISDICTION AND VENUE</u>

5.      The Court has jurisdiction under 28 U.S.C. § 1331.  Pursuant to 28 U.S.C.

963167 v1

§ 1367, the Court has supplemental jurisdiction with respect to plaintiff's claims under the Executive Law, and the City Law.

6.    Pursuant to § 8-502(c) of the City Law, concurrent with filing this Second Amended Complaint, plaintiff served a copy of the Complaint on the City of New York Commission on Human Rights and the Corporation Counsel of the City of New York.

7.    Plaintiff also filed a charge of discrimination with the Equal Employment Opportunity Commission (the "EEOC") under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. (the "ADA") on December 27, 2017. Plaintiff received a Notice of Right to Sue from the EEOC on June 11, 2018. Plaintiff made a timely request to amend her complaint to add claims under the ADA.

8.    As the unlawful employment practices complained of herein occurred within the Southern District of New York, venue is proper in this District pursuant to 28 U.S.C. § 1391.

PARTIES

9.    Plaintiff is an individual with a disability within the meaning of the ADA, the Executive Law, and the City Law, and an individual with a handicap within the meaning of the Rehabilitation Act.

10.    Defendant CUNY is a publicly-funded university system, comprised of senior and community colleges, graduate and professional schools, research centers, institutes and consortia. Its headquarters and principal place of business is Manhattan. One of the senior colleges within CUNY is CCNY. On information and belief, CUNY receives federal financial assistance.

963167 v1

11.      Defendant Boudreau is the President of CCNY. He was the interim President of CCNY from November 2016 to December 4, 2017. From 2014-16 he was the Dean of the Colin Powell School of Civic and Global Leadership at CCNY ("Powell School").

12.      Defendant Cronin has at all relevant times been employed as a professor in the department of political science at CCNY. From 2012 to 2018, he has served as the chair of the department.

13.      Defendant Occhiogrosso has at all relevant times served as the Executive Counsel to the President of CCNY and, at certain points, including since fall 2016, CCNY's Labor Designee.

14.      Defendant Driscoll was named interim Provost in May 2016 and served as the interim Provost of CCNY from August 1, 2016 to March 12, 2018.

15.      Defendant Foster has served as the interim Dean of the Powell School at CCNY since November 2016.

16.      Defendant Krinsky has at all relevant times been employed as a professor in the department of political science at CCNY. From 2010-2012 he served as the chair of the department.

17.      Defendant Menon has at all relevant times been employed as the Spitzer Chair in the department of political science at CCNY.

18.      Defendant Tartter has at all relevant times been employed as a professor in the department of psychology at CCNY.

963167 v1

BACKGROUND INFORMATION

Dodd's Hiring

19.    Dodd was employed by CCNY as the Joseph H. Flom Professor of Legal Studies ("Flom Professor") from January 2010 to August 2018.  It was a tenure-track, associate professor position.

20.    Before working for CCNY, Dodd was a law professor at American University's Washington College of Law from 2005-2010.  She earned her PhD in Politics from Princeton University in 2004 and her J.D. from Yale Law School in 2000.

21.    In a memorandum dated September 29, 2009, Boudreau, then a political science professor who served as the chair of the hiring committee for the Flom Professor position, justified a higher salary for Dodd's position, noting her "extraordinary qualifications," her experience as a law professor, and the "extraordinary nature of this position and its relationship to the donor funded Skadden-Arps honors program in legal studies." He emphasized that Dodd's qualifications, including her "credentials and stature," "far exceeded all other candidates in terms of her qualifications and experience" and concluded that "in every respect—her interview, her presentation and her vision for the Program—Lynda Dodd was head and shoulders above the rest of the candidates."

22.    Dodd's duties and benefits as the Flom Professor were enumerated in a June 19, 2009 supplemental offer letter. The offer letter listed the following duties: serving as the academic leader developing the honors program, creating the academic curriculum, teaching the honors seminars, advising students, and working with the Skadden, Arps law firm to promote the reputation of the honors program. The supplemental offer letter also extended to Dodd a supplemental salary equal to one-third of her base salary as an associate professor at CCNY.  Dodd

received a course load with one less class than other non-tenured professors that, on information and belief, has been paid for by CCNY.

23.    From the beginning of her employment until the summer of 2012, Dodd reported to Krinsky, then the chair of the political science department.

24.    After Dodd began teaching at CCNY in January 2010, her courses were well reviewed by other faculty and her students in the honors program.

Dodd's Disability

25.    In spring 2010, Dodd was diagnosed with MS.  Initially, her symptoms included facial spasms and difficulty climbing stairs.

26.    In or about June 2010, Dodd advised Krinsky of her MS diagnosis.

27.    Dodd had her first child in June 2011 and took parental leave during the fall 2011 semester.  During and following her pregnancy, Dodd experienced fatigue and mobility challenges.  An MRI in the summer of 2011 confirmed demyelination in her cervical spine, which is damage to the protective covering of nerve fibers.

28.    From summer 2012 through 2013, Dodd contracted a series of viral infections that caused her to lose her voice and cough incessantly.  She may have been more susceptible to the viruses because her MS medication suppressed her immunity.

29.    In late 2012/early 2013, Dodd's MS symptoms worsened, including declining mobility, extreme fatigue, and a severe form of pain called "dysesthetic extremity pain."

30.    In April 2013, an MRI report showed additional demyelinating lesions in Dodd's cervical spine.

31.    In January 2014, one of Dodd's neurologists advised her that her disease course and tests were consistent with primary progressive MS, the more severe form of the disease.

Reappointment and Tenure Procedures and Standards

32.    Junior faculty such as Dodd are initially appointed for a one-year term, and then considered for reappointment for successive one-year terms. The procedures and standards for reappointment are governed by the Bylaws of the CUNY Board of Trustees ("Bylaws"), the CUNY Code of Practice Regarding Instructional Staff Titles, the 1975 Statement of the Board of Higher Education on Academic Personnel Practice, the CCNY Governance Plan, and the collective bargaining agreement between CUNY and the Professional Staff Congress ("PSC").

33.    The executive committee of each professor's department first votes each year on whether to recommend reappointment. If the department recommends reappointment, the Personnel & Budget ("P&B") Committee for the school or division within CCNY then votes. If favorable, the reappointment advances to the CCNY Review Committee, which makes a recommendation to the college's President. There are appeal processes in place for negative votes at any of the stages.

34.    After serving six years, the next review for reappointment is for reappointment with tenure. Junior faculty who take parental leave may elect to add one year to the tenure clock. Thus, Dodd would be eligible to be reviewed for tenure in Fall 2017.

35.    The procedure for tenure review, after compiling materials and soliciting evaluation letters, is comparable to the reappointment procedure, proceeding from the department (this time with a vote of the full department) to the P&B Committee, to the Review Committee, to the President, with opportunities to appeal adverse decisions.

36.    Section 6.2.c. of the Bylaws permit consideration of faculty for tenure prior to the completion of seven years of service when, *inter alia*, "for a very substantial reason the college would be well served by such early grant of tenure." There is one standard for tenure for

all tenure-track faculty regardless of title and time of application, as confirmed by the 1975 Statement of the Board of Higher Education on Academic Personnel Practice in The City University of New York and the CUNY Chancellor's memorandum dated January 1, 2005.

37.    During the fall semester in 2012, the senior political science faculty — including on information and belief defendants Boudreau, Cronin, Krinsky, and Menon — disseminated a new departmental policy memorandum (the "Department Tenure Memo") explaining in detail their interpretation of the CUNY tenure standard. The Department Tenure Memo included detailed guidance regarding expectations for scholarship as well as examples of successful tenure packages, including those with one sole-authored university press book and four sole-authored chapters in a university press book or peer-reviewed articles.

38.    In October 2012, Cronin, after becoming chair of the department, confirmed to Dodd that the same tenure standard applied to all junior faculty, including Dodd.

Separate Review Process For Flom

39.    In June 2011, Krinsky met with Dodd and told her that the department's executive committee — which on information and belief included Krinsky, Menon, and Boudreau — had conducted a separate review and renewal vote process relating to Dodd's Flom Professor title and benefits in May 2011. Krinsky gave Dodd a memorandum stating that the executive committee had, and would in the future, conduct an "annual review" for Dodd's "position" as Flom Professor. Dodd had never before been told of any separate review for the Flom Professorship, the position for which she had been hired, nor had one been conducted in her first year. No CUNY or CCNY policy authorized this separate review process.

40.    In April 2012, Krinsky sent Dodd a letter regarding her second off-the-books evaluation and separate renewal of her Flom Professor title and benefits. Krinsky stated the

executive committee expected her to be "ready to come up for tenure early," before September 2017.

41.    After receiving the April 2012 letter, Dodd asked Occhiogrosso the basis for the separate Flom evaluation and renewal vote. Occhiogrosso admitted no written policy at CCNY or CUNY authorized this process.

42.    In March 2013, Cronin provided Dodd a letter about the off-the-books departmental evaluation of her "role" as Flom Professor. Cronin stated that the department's executive committee would give her one more year to complete a book manuscript; if she did not, they would deem it a failure to meet the "high standard" for "research production" for the Flom Professor position.

<u>Requests for Accommodation</u>

43.    On May 23, 2013, Dodd met with then-Provost Maurizio Trevisan ("Trevisan"). Dodd showed Trevisan her medical records, identified herself as an employee with a disability, and stated that she was requesting an accommodation to deal with the difficulties with her MS that were affecting the speed and pace of research production. She also raised concerns about Cronin's March 2013 letter regarding her Flom title and benefits. As a first step, Dodd requested that she be advised of the "essential duties" of her position, including the duties associated with the Flom Professor title and benefits.

44.    From May 23, 2013 through September 2014, Dodd had discussions about reasonable accommodations with Human Resources ("HR") employees, Trevisan, Cronin, Menon, Occhiogrosso, and Boudreau, but was met with delays, obstruction and, at times, hostility.

45.    In October 2013, HR provided Dodd with a memorandum clarifying that her essential—and only—duties relating to the Flom title and benefits were those outlined in her

963167 v1

2009 supplemental offer letter concerning teaching, advising, and serving as academic leader of the program.

46.     In the midst of this period in which Dodd was repeatedly trying to engage in an interactive process to obtain an accommodation, on January 1, 2014, Boudreau assumed the position of Dean of the newly-established Powell School, of which the political science department was part.

47.     In a February 2014 meeting, Menon asked Dodd to agree to a shorter schedule for her research production than her tenure clock, despite her accommodation request. When Dodd told Menon that she intended to pursue her accommodation request, Menon reacted with hostility. During this period, Dodd repeatedly requested to remain on the regular tenure clock, not the accelerated tenure clock for the Flom position that Menon and others in her department were attempting to force on her.

48.     On March 27, 2014, HR notified Dodd that her requested accommodation relating to her review and annual renewal as the Flom Professor was denied based on the false assertion that there was no separate review process for serving as the Flom Professor, only the annual evaluation governed by CUNY policies and the PSC collective bargaining agreement.  In a meeting with Dodd, Occhiogrosso admitted no other professor with a named chair was subject to a separate renewal vote.  In 2014, for the first time since 2010, Dodd did not receive a letter from her chair about her separate Flom review and renewal.

49.     In May 2014, Trevisan sent Dodd a letter advising her that the Review Committee had voted against the renewal of her Flom Professor title and benefits for the 2014-15 academic year.  As Dean, Boudreau would have been the person to present Dodd's record to the Review Committee.  On information and belief, Menon was a member of the Review Committee

10

that year. On information and belief, Cronin and Boudreau withheld materials favorable to Dodd from the Review Committee.

50.     In May 2014, HR notified Dodd that, after consulting with Boudreau and Cronin, her request for an accommodation with respect to her duties as the Flom Professor was denied. The letter ignored the requested accommodations relating to Dodd's position as a tenure-track faculty member, and proposed no alternate accommodation. The letter advised Dodd that she could "appeal" the denial to Michele Baptiste ("Baptiste"), the CCNY Dean of Diversity, Compliance, and Faculty Relations.

51.     Dodd filed an appeal with Baptiste on May 12, 2014. Dodd also filed an appeal of the denial of the vote to take away her Flom title and benefits to then-President Lisa Coico ("Coico").

52.     On July 9, 2014, Coico granted Dodd's appeal and renewed her Flom Professor title and benefits for the 2014-15 academic year. On July 15, 2014, Baptiste wrote to Dodd that because she already received the remedy she sought, Baptiste would not render a decision on her request for reasonable accommodation. Instead, Baptiste directed Dodd to meet with Cronin to discuss the issue.

53.     On September 4, 2014, Dodd met with Cronin to discuss the manuscript she had submitted to the department executive committee as part of her mid-term tenure review. After Cronin resisted providing Dodd adequate guidance, she repeatedly stated that she remained in need of a reasonable accommodation to give her time to complete the research expected for tenure.

963167 v1

Dodd's Complaints

54.    On September 16, 2014, Cronin sent Dodd an email stating that the department executive committee voted against reappointing her as a tenure-track associate professor for the 2015-16 academic year.

55.    In September 2014, Dodd communicated with Baptiste about the department vote, her meeting with Cronin on September 4, 2014, and her need for an accommodation. Baptiste raised the possibility of extending the time on Dodd's tenure clock as an accommodation. Dodd said that could be an appropriate accommodation, so long as she could be evaluated for tenure at an earlier time if she did not need the extension, and without it being held against her.

56.    In November 2014, Baptiste told Dodd that Boudreau and Cronin opposed the reasonable accommodation on the ground Dodd did not request an accommodation until after the department vote. Dodd reminded Baptiste that she had begun requesting an accommodation in May 2013 and had discussed it with many others since then, including with Cronin on September 4, 2014. Baptiste said Cronin denied that Dodd had done so.

57.    In December 2014, Trevisan advised Dodd that the Review Committee voted to deny her appeal of non-reappointment. Boudreau was responsible for presenting Dodd's case to the Review Committee. On information and belief, Menon was a member of the Committee.

58.    In December 2014, Baptiste told Dodd that Boudreau, Cronin, and others refused to agree to any reasonable accommodation for Dodd. Baptiste suggested Dodd submit a written response outlining her position, supported by legal citation. Baptiste sent the formal rejection of a reasonable accommodation to Dodd on December 17, 2014.

963167 v1

59.    On December 19, 2014, Dodd's counsel sent a letter to CUNY asserting disability discrimination claims on her behalf.  CUNY and CCNY took no corrective action in response.

60.    On January 14, 2015, Dodd appealed her non-reappointment to Coico.  In addition to providing information about her accomplishments and procedural irregularities, she advised Coico of the disability discrimination to which she had been subjected and her extensive attempts to obtain a reasonable accommodation.  Dodd also disclosed that she could prove that Cronin lied about the September 4, 2014 meeting, as Dodd had recorded the meeting.  Dodd subsequently shared the recording with Baptiste and Coico.

61.    In January 2015, Dodd filed a complaint of disability discrimination against Cronin with Baptiste.

62.    On March 5, 2015, Coico granted Dodd's appeal and reappointed her for 2015-16.  Coico's letter did not address Dodd's ongoing accommodation requests.

63.    Two days after Dodd won her appeal, Cronin tried to alter Dodd's course schedule in an adverse manner.  In March 2015, Dodd filed a complaint of retaliation against Cronin and Boudreau with Baptiste.

64.    On June 29, 2015, Baptiste issued findings on Dodd's discrimination and retaliation complaints.  Baptiste concluded that Cronin had discriminated against Dodd and lied in order to deny her a reasonable accommodation and ensure she was not reappointed as associate professor for the 2015-16 academic year.  Baptiste reported that when she revealed Dodd's recording to Cronin he became "visibly angry," falsely accused Dodd of acting illegally, and stated he never wanted to speak with Dodd again.  Baptiste also found that Cronin and Boudreau had retaliated against Dodd, including Boudreau trying to distance Dodd from the program she

13

oversaw.   Baptiste recommended that Cronin be removed as chair of the political science department; that Dodd be protected from further retaliation, including by separating "future personnel actions" from the political science department; and that Boudreau be given a "letter of discipline."   To Dodd's knowledge, no steps were taken to implement any of Baptiste's recommendations.

65.    In September 2015, Dodd again raised the issue of an accommodation with Baptiste to allow Dodd additional time to complete research for her reappointment and tenure. Baptiste agreed to begin implementation of Dodd's reasonable accommodation.

66.    Despite Baptiste's findings and recommendations, in fall 2015 Cronin began overseeing Dodd's reappointment procedures. Dodd emailed Baptiste to ask why this was being permitted.   Cronin sent Dodd multiple hostile emails.   On information and belief, there were multiple procedural irregularities with Dodd's reappointment process, including voting changes, use of an outdated curriculum vitae ("CV"), withholding information favorable to Dodd, and scheduling changes.

67.    On November 11, 2015, Dodd was told that the executive committee of the political science department voted not to reappoint her.

68.    In violation of CCNY procedure, Boudreau never scheduled a merits appeal for Dodd following the executive committee's vote.

69.    On November 23, 2105, Dodd filed with Baptiste complaints of disability discrimination and retaliation against Boudreau, Cronin, Menon, and Occhiogrosso.

70.    In January 2016, an employee in CUNY HR informed Dodd that she was taking over the complaints Dodd filed with Baptiste.   On information and belief, Boudreau, Cronin, and Menon had objected to Baptiste handling the investigation.   Thereafter, the CUNY HR

963167 v1

employee delayed conducting an investigation and lied about what steps she had taken with respect to the investigation.

Settlement Agreement

71.    On June 8, 2016, Dodd, CUNY, CCNY and the PSC entered a Settlement Agreement.

72.    Under the Settlement Agreement (in relevant part):

(a)    CCNY would recommend to the CUNY Board of Trustees that Dodd be granted a two-year reappointment, through the 2017-18 academic year;

(b)    CCNY agreed to add two years to Dodd's tenure clock, so that she would not be required to be reviewed for tenure until the fall of 2019;

(c)    Dodd was permitted to apply for tenure earlier if she so chose;

(d)    The parties agreed that so long as Cronin remained chair, the Provost or his designee would conduct Dodd's teaching observations and annual performance evaluations, set Dodd's teaching schedule, and provide any necessary approvals for personnel actions;

(e)    The parties agreed that so long as Cronin was chair or a member of the department executive committee, he would not take part in, or vote, in connection with any reappointment, promotion, or other personnel decision regarding Dodd. In lieu of Cronin, the Provost would appoint a tenured faculty member from another department to serve on the department executive committee solely for the purpose of the decision at issue regarding Dodd.

(f)    The parties agreed that if Dodd had concerns about anyone appointed by the Provost to fulfill what would otherwise be Cronin's role, Dodd

15

would have the opportunity to raise her concerns about the selection before it was final, although the ultimate decision remained with the Provost.

(g)    The parties agreed that Dodd's annual evaluation for the 2015-16 academic year would be conducted in the fall semester, no later than October 31, 2016.

73.    Dodd, through her counsel, requested that other provisions be implemented to prevent ongoing retaliation, but CUNY refused.

74.    The Board of Trustees accepted CCNY's recommendation and reappointed Dodd for two years, through the 2017-18 academic year.

75.    While Dodd does not allege claims based on the pre-settlement actions, these actions are evidence supporting Dodd's claims of retaliation thereafter.

Retaliation After the Agreement

76.    After Cronin began emailing Dodd to ask her about course assignments in August 2016, Dodd emailed both Driscoll and HR to ask them to address the settlement provisions preventing Cronin from any oversight role with respect to Dodd.

77.    On October 7, 2016, Coico submitted her resignation, effective immediately. On November 1, 2016, Boudreau was named interim President of CCNY.

78.    CCNY did not conduct an evaluation for Dodd by the October 31, 2016 deadline required by the Settlement Agreement.

79.    By early 2017, Dodd believed that she met the criteria for tenure. She had a final contract for a book with the highly-regarded Cambridge University Press. In addition, since joining CCNY, she had completed a book she edited and to which she contributed three chapters (also published by Cambridge University Press), had a peer-reviewed journal article published,

963167 v1

received an invitation to revise and re-submit an article to another peer-reviewed journal, had a chapter in a book published by NYU Press, had two law review articles published, and had a proposal for a second sole-authored book under review by Cambridge University Press.

80.    Dodd met with Baptiste and Driscoll on February 8, 2017. Dodd advised them that she would like to be reviewed for tenure in 2017 and needed guidance, as she could not turn to her chair, Cronin, and had not received an unbiased evaluation in many years. Dodd noted that she had not received her evaluation by October 31, 2016. Driscoll said she would arrange for an immediate evaluation, but that never happened. Driscoll claimed that the standard for early tenure was heightened, which Dodd refuted.

81.    In the February 8, 2017 meeting, Dodd told Driscoll and Baptiste that she was being subjected to ongoing retaliation from Cronin, who excluded her from departmental faculty emails. Dodd said that given her past experience, she did not think an internal complaint would be helpful to her. Driscoll emphatically shook her head, suggesting she agreed. Dodd also asked about Boudreau's role in any decisions about her status. Driscoll said that Boudreau had told her that he would recuse himself from discussions involving Dodd and that Driscoll would be the final decisionmaker.

82.    In the February 8, 2017 meeting, Dodd told Driscoll that she had been invited to teach a graduate seminar at the CUNY Graduate Center in the fall. Dodd explained that she thought the graduate seminar would strengthen her tenure package. Driscoll said that would be fine and asked Dodd to forward the information to her.

83.    In the February 8, 2017 meeting, Dodd also asked if she would be receiving back pay for the supplemental portion of her salary as a result of the new PSC contract. Driscoll said she would look into it. Dodd never heard back from her. After Dodd raised the issue again

17

in July 2017 she received a payment which, on information and belief, is not the full payment owed.

84.     On February 23, 2017, Dodd followed up with the CUNY Graduate Center about her seminar. Dodd was told that the paperwork had been sent to Cronin, who gave them a negative report about Dodd. Cronin told them that he would not approve the course. Dodd asked if the Graduate Center could instead send the paperwork to Driscoll, who was serving as Cronin's replacement. The Graduate Center faculty member expressed concern about moving forward without Cronin's approval, as they needed to maintain good relations with the department.

85.     In emails to Baptiste and Driscoll on February 23 and 24, 2017, Dodd asked them to inform the CUNY Graduate Center that she had approval from Driscoll to teach the seminar and asked them to investigate Cronin's retaliation and breach of the settlement agreement. Rather than doing so, Driscoll asked the interim Dean of the Powell School, Foster, to take over responsibility for Dodd's course assignments and review what happened with the Graduate Center paperwork. Foster took no action for eight weeks, by which time the Graduate Center had already set the fall calendar, without Dodd's seminar.

86.     At a meeting on April 3, 2017, Dodd told Driscoll that Cronin continued to exclude her from faculty emails. Driscoll advised Dodd that she would not receive any evaluation for the 2015-2016 academic year and that Driscoll had asked Tartter to conduct Dodd's annual evaluation for the 2016-2017 academic year. Driscoll had not given Dodd an opportunity to object before asking Tartter.

87.     By letter dated April 4, 2017, Dodd objected to using Tartter, a psychology professor, as her evaluator, as her field was so far from Dodd's that it could affect her ability to evaluate Dodd's scholarship and offer appropriate guidance through the tenure process. Dodd also

963167 v1

said that she appreciated that Boudreau would be recusing himself from decisions regarding her, but she was concerned that shifting procedures and delays could have repercussions for her tenure review, which remained her primary focus.

88.     By letter dated April 10, 2017, Driscoll overruled Dodd's objection to Tartter.  Driscoll acknowledged referring to Boudreau's recusal in their February meeting, but stated that "nothing was decided in that regard."  Driscoll also confirmed that Cronin said Dodd was on the faculty mailing list.  Cronin, however, continued to exclude Dodd from faculty emails.

89.     In spring 2017, the political science department reelected Cronin to another term as chair.

90.     Foster and Dodd met on April 20, 2017.  Dodd asked him about going up for tenure early and said she did not have any guidance about the process because she has no one advising her and no proper annual evaluation in many years.  Dodd also mentioned that she would be finishing her Cambridge University Press book manuscript in July.  Foster expressed no objection to that schedule.

91.     When the PSC learned about Cronin's action and CCNY's failure to provide Dodd with her 2015-2016 annual evaluation by October 2016, the PSC wrote to Occhiogrosso on April 26, 2017, to ask about these breaches of the settlement agreement.  The PSC also asked for the basis for Driscoll's statement that there was a higher standard for early tenure.  Occhiogrosso's response, dated May 8, 2017, was evasive and contained multiple inaccurate statements.

92.     On May 22, 2017, Dodd emailed Krinsky, who was substituting for Cronin for Dodd's tenure application, and asked if she could provide the manuscript for her book at the end of July, when she would be finished editing and sending it to Cambridge University Press.

Dodd also forwarded this request to Foster.  Krinsky confirmed that Dodd could complete her file with all of her manuscripts and the candidate statement by the end of July.

93.      Tartter met with Dodd on May 22, 2017 to conduct her annual evaluation for the 2016-17 school year.  Dodd began by telling Tartter about her disability, her need for an accommodation, and the resulting Settlement Agreement.  Tartter responded by stating that Dodd's books were "taking forever."  Tartter was hostile and adversarial throughout the meeting.  She also told Dodd that her report would have nothing to do with tenure.  Tartter's written report, dated May 29, 2017, reflected the same hostility and did not provide the professional guidance required in the annual evaluation process.

94.      On June 5, 2017, Dodd submitted a memorandum rebutting Tartter's report and describing her unprofessional and hostile conduct, her disdain for Dodd's disability, and her inaccurate statements.  That same day, Dodd provided copies of her memorandum to Driscoll and, as part of a discrimination complaint, to Baptiste.

95.      On June 6, 2017, the PSC filed a grievance supporting Dodd's objections to the annual review process and requesting that all documents relating to Tartter be removed from Dodd's personnel file.  Due to Occhiogrosso's opposition and refusal to abide by the PSC collective bargaining agreement deadline for grievances, Tartter's report remained in Dodd's file during the reappointment process in fall 2017 and her appeals in 2018.

96.      Immediately after Dodd submitted her response to Tartter's evaluation to the Dean's office and her complaint to Baptiste, Krinsky told Dodd that he could no longer wait until the end of July to send out her manuscripts.  He said that Foster and others in her department, including Menon, supported this change.  Dodd objected, saying she had relied on the schedule

963167 v1

agreed to in May. Krinsky told Dodd she had only a few days to submit all the materials for her tenure case. Dodd alerted Baptiste to this harmful and retaliatory act.

97.    Dodd sent Krinsky all of her tenure materials except for the manuscript of her book, which was about to be edited. Because of the abrupt change in the schedule, Dodd could not draft an updated candidate statement, perhaps the most crucial document the external reviewers would read. Over Dodd's objection, Krinsky also changed Dodd's CV to state that her book was a "work in progress." Krinsky promised that he would change the description of her book once she submitted the edited manuscript. Dodd provided Krinsky with the edited manuscript of her book and a letter from her Cambridge University Press editor on August 2, 2017. She later learned Krinsky never changed her CV.

98.    Soon after Dodd turned in her manuscript, she emailed Baptiste to request verification that everything in her tenure package was in order. Baptiste said she would check with Driscoll, but never got back to Dodd.

99.    Dodd received notice that her department had voted against early tenure on October 5, 2017. Through counsel, Dodd advised CUNY that she would be filing a lawsuit. Dodd also filed a timely internal appeal at CCNY.

100.    On October 12, 2017, Dodd sent the person filling Cronin's role for her reappointment vote an updated CV.

101.    On October 12, 2017, Dodd spoke with Baptiste to complain of ongoing retaliation and her futile efforts to obtain relief within CCNY. She also expressed concern that CCNY was moving ahead with her reappointment vote before her grievance and discrimination complaint about Tartter's evaluation had been resolved.

963167 v1

102.     On October 16, 2017, Dodd was advised that her department had voted in favor of her reappointment for the 2018-19 academic year.

103.     On October 27, 2017, Foster sent Dodd's tenure application back to her department for a re-vote due to a minor technicality—an unsigned cover sheet.

104.     On November 1, 2017, Foster emailed Dodd that the Flom Professor title and benefits would not extend beyond the 2018-19 academic year. Not only did this decision mean a decrease in Dodd's salary by over $40,000, but it may also have entailed that Dodd would have a heightened course load or have to teach all-new classes.

105.     On November 2, 2017, Dodd was advised her department had again voted against tenure. Dodd filed another internal appeal on November 16, 2017. She also advised Foster and others that she would be proceeding with litigation under the civil rights statutes.

106.     On November 29, 2017, Dodd received a letter stating that the Review Committee had voted that day to overturn her reappointment for the 2018-19 academic year. The Review Committee includes Driscoll, Foster, and seven deans, all of whom report to Boudreau, and two *ex officio* members, including, on information and belief, Menon. This vote occurred two days before the collective bargaining agreement-mandated deadline of December 1, 2017 for the committee to give notice of reappointment to tenure-track faculty.

107.     Dodd's only recourse within CCNY to appeal the non-reappointment was to Boudreau.

108.     At Dodd's request, on November 30, 2017, Occhiogrosso sent her the materials the Review Committee had when it voted on her reappointment. The materials included Tartter's evaluation and Dodd's response. It did not include the updated CV Dodd had submitted on October 12, nor did it include the feedback from the external review letters solicited as part of

963167 v1

her tenure application. On information and belief, Dodd had received positive letters from senior scholars in her field.

109.    On December 4, 2017, Dodd sent an email to Baptiste requesting that Chancellor James Milliken review her internal appeals of non-reappointment and her tenure case, given the prior finding that Boudreau had retaliated against Dodd. Baptiste responded that she would check with other diversity officers within CUNY and let Dodd know as soon as she could. Baptiste never responded.

110.    On December 4, 2017, the CUNY Board of Trustees appointed Boudreau to serve as President of CCNY.

111.    Despite Boudreau's role in creating special heightened procedures for Dodd, obstructing her efforts to obtain an accommodation, and retaliating against her, Boudreau remained the final decisionmaker regarding Dodd's reappointment as associate professor and for early tenure.

112.    On December 19, 2017, the P&B Committee voted to reappoint Dodd with early tenure, effective September 2018. That decision was then scheduled to be reviewed by the same Review Committee that on November 29, 2017 voted to overturn Dodd's reappointment (without tenure).

### Review Committee's Early Tenure and Reappointment Decision

113.    On January 4, 2018 Dodd appealed the Review Committee's November 29, 2017 decision to Boudreau and Chancellor James Milliken. In her appeal she informed them that her second sole-authored book had been accepted by Cambridge University Press on January 2, 2018. She also included a Scholar's Statement, signed by 50 prominent senior political scientists

963167 v1

who specialize in the study of law and courts. In this letter, these scholars called CCNY's vote against early tenure a "manifest injustice." (See Exhibit A, attached)

114.      That same day Dodd wrote to Foster and Driscoll asking that these materials be presented to the Review Committee when it voted on early tenure on February 7, 2018.

115.      On January 8, 2018, the Chancellor's Office sent back Dodd's appeal stating that her merits appeal would remain a "college matter", ensuring that Boudreau would be the final decision maker.

116.      On January 11, 2018 Dodd received a communication from Driscoll stating that she would not be permitted to present the favorable Scholar's Statement to the Review Committee when it considered Dodd for early tenure.

117.      On January 28, 2018 the Vice President of Human Resources, informed Dodd that CCNY denied Dodd's request to pay her the money she was owed as part of her supplemental salary.

118.      On February 2, 2018 Boudreau sent Dodd a letter informing her that he would direct the Review Committee to vote again on her reappointment so that her entire personnel file could be considered. Dodd still had not heard from Occhiogrosso about whether Tartter's evaluation would be removed from the file.

119.      That same day Dodd emailed Foster and Driscoll to request that the Review Committee have her entire personnel file, including the Scholar's Statement and the confirmation that her second sole authored book was accepted by Cambridge University Press.

120.      On February 5, 2018, Driscoll confirmed that these materials would be included.

121.    On February 8, 2018, Defendant Driscoll informed Dodd by letter that the Review Committee voted to deny Dodd early tenure and again voted to deny reappointment to the title of associate professor for 2018-2019.

122.    This is the same Review Committee that denied Dodd reappointment in November 2017, and three of whose members are named defendants in this lawsuit. All but one of the members of the Review Committee report directly to Boudreau.

123.    On February 13, 2018, Occhiogrosso denied Dodd's grievance requesting removal of Tartter's evaluation from Dodd's file. Occhiogross never recused himself from this grievance, and CUNY did not require him to recuse himself, despite him being a named defendant in Dodd's lawsuit.

124.    On April 2, 2018, Boudreau denied Dodd's appeal from the negative recommendation of the Review Committee concerning her application for early tenure.

125.    On April 12, 2018, the Step 2 hearing was held on Dodd's grievance on the Tartter evaluation. Occhiogrosso again refused to recuse himself and represented CCNY at the review hearing. He successfully fought to keep Dodd's recording of her annual evaluation with Tartter out of evidence and successfully fought Dodd's request to record the hearing, even when she explained that she needed it as an accommodation because taking notes was difficult due to her disability.

126.    That same day Dodd provided Baptiste with a copy of the recording of her conference with Tartter and referenced the internal discrimination complaint Dodd filed about the Tartter review in June 2017.

127.    On April 19, 2018, Boudreau denied Dodd's final appeal from the negative recommendation of the Review Committee concerning her reappointment, thus firing her effective August 2018.

128.    On April 25, 2018, Baptiste informed Dodd that she could not investigate Dodd's complaint against Tartter (originally filed in June 2017) allegedly because of the instant lawsuit (filed December 2017). On April 26, 2018, CCNY fired Baptiste. Upon information and belief, CCNY fired Baptiste because of her advocacy for Dodd and other employees.

FIRST CAUSE OF ACTION

(REHABILITATION ACT)

(Against CUNY)

129.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 126 of this Complaint as if set forth fully herein.

130.    On information and belief, CUNY receives federal funds.

131.    In violation of the Rehabilitation Act, defendant CUNY has retaliated against plaintiff in the terms and conditions of her employment after June 8, 2016, including by creating a hostile work environment.

132.    As a result of defendant CUNY's unlawful acts, plaintiff has suffered irreparable injury, emotional distress and humiliation, mental anguish, stress, damage to reputation, and other compensable damage and will continue to do so unless and until this Court grants relief.

SECOND CAUSE OF ACTION

(ADA)

(Against Boudreau in his Official Capacity)

133.    Plaintiff repeats and realleges each and every allegation contained in

963167 v1

paragraphs 1 through 130 of this Complaint as if set forth fully herein.

134.    By the acts and practices described above, Boudreau retaliated against plaintiff in the terms and conditions of her employment after June 8, 2016 in violation of the ADA.

135.    As a result of Boudreau's unlawful acts, plaintiff has suffered irreparable injury and will continue to do so unless and until this Court grants injunctive relief ordering Boudreau to reinstate plaintiff to the faculty, with tenure and full compensation and benefits, including her established course load.

## THIRD CAUSE OF ACTION

## (EXECUTIVE LAW)

(Against the Individual Defendants in their Individual Capacities)

136.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 133 of this Complaint as if set forth fully herein.

137.    By the acts and practices described above, the individual defendants have retaliated against plaintiff in the terms and conditions of her employment after June 8, 2016, including by creating a hostile work environment and aided and abetted CUNY in retaliating against plaintiff for her protected activity, in violation of the Executive Law.

138.    As a result of the individual defendants' unlawful acts, plaintiff has suffered irreparable injury, emotional distress and humiliation, mental anguish, stress, damage to reputation, and other compensable damage and will continue to do so unless and until this Court grants relief.

963167 v1

FOURTH CAUSE OF ACTION

(CITY LAW)

(Against the Individual Defendants in their Individual Capacities)

139.       Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 136 of this Complaint as if set forth fully herein.

140.       By the acts and practices described above, the individual defendants retaliated against plaintiff in the terms and conditions of her employment after June 8, 2016, including by creating a hostile work environment and aided and abetted CUNY in retaliating against plaintiff for her protected activity, in violation of the City Law.

141.       As a result of the individual defendants' unlawful acts, plaintiff has suffered irreparable injury, emotional distress and humiliation, mental anguish, stress, damage to reputation, and other compensable damage and will continue to do so unless and until this Court grants relief.

142.       Defendants engaged in the retaliatory conduct with conscious or reckless disregard to plaintiff's rights.


WHEREFORE, plaintiff respectfully requests that this Court enter a Judgment:

(a)       declaring the acts and practices complained of herein to be violations of the Rehabilitation Act, the ADA, the Executive Law, and the City Law;

(b)       enjoining and permanently restraining these violations of the Rehabilitation Act, the ADA, the Executive Law, and the City Law;

(c)       directing defendants to take such affirmative steps as are necessary to ensure that the effects of these unlawful practices are eliminated and do not continue to affect plaintiff's

employment opportunities, including restoring positions, duties, and course load to plaintiff that have been taken away, and granting her tenure;

    (d) directing defendants to make plaintiff whole for all losses she has incurred as a result of defendants' retaliatory acts;

    (e) directing defendants to pay plaintiff compensatory damages, including damages for reputational harm, emotional distress, humiliation, and resulting physical injury;

    (f) directing the individual defendants to pay plaintiff punitive damages under the City Law;

    (h) awarding plaintiff the costs of this action, together with reasonable attorneys' fees, as provided by the Rehabilitation Act, the ADA, and the City Law; and

    (f) granting such other and further relief as this Court deems necessary and proper.

<u>DEMAND FOR TRIAL BY JURY</u>

    Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiff demands a trial by jury in this action.

Dated: New York, New York
   September 11, 2018

         VLADECK, RASKIN & CLARK, P.C.

     By:   /s
        Anne L. Clark
        Thomas Bellifemine
        Attorneys for Plaintiff
        565 Fifth Ave, 9th Floor
        New York, New York 10017
        212) 403-7300

29

963167 v1

EXHIBIT A



THE UNIVERSITY OF
KANSAS
School of Public Affairs
& Administration

January 3, 2018

Vincent Boudreau, President
The City College of New York

James Milliken, Chancellor
City University of New York

Dear President Boudreau and Chancellor Milliken,

We, the undersigned, are political scientists who specialize in the study of law and courts. We are taking the unusual step of writing to encourage you to overturn the decision to deny promotion and tenure to Lynda Dodd. Professor Dodd has a remarkable record of important, sophisticated scholarship on the conservative turn in the law of remedies for civil rights violations, an area of considerable importance in our field. We write this letter because we believe the decision to deny tenure to Lynda Dodd is a manifest injustice. We were especially troubled to see that some City College officials voted to deny her annual reappointment after she had received from CUNY a disability accommodation to extend her tenure clock and shortly after she had notified the university that she would file an internal appeal and federal court complaint regarding her denial of early tenure. These decisions are, to us, all the more puzzling because we regard Lynda Dodd as a scholar of considerable importance and promise, with a record of publication and quality teaching that clearly merits promotion and tenure.

Lynda's research contributes to an exciting area of research that draws together the history of political institutions, social movements and political coalitions, formal policies and law. This area is among the most innovative and important in the discipline, contributing some of the most influential books and journal articles in recent years. Lynda's research makes important contributions to this area by deeply analyzing the law and policy of remedies for rights violations. Although a complicated policy area, it is truly important, as civil rights are effective only to the extent that these remedies work in practice. Lynda Dodd is one of a handful of scholars in political science and law who have mastered this area of law. More importantly, she is the clear leader in analyzing the policy implications of this area of law. Her research is characterized by extraordinarily thoughtful, sophisticated, and clear analyses of judicial decisions and their policy implications. Her research draws deeply on original sources, among them lawyers' briefs and justices' papers, and she makes compelling arguments with broad significance for our scholarly field and for policy and practice.

PI. 003026 (Confidential)

Lynda Dodd enjoys a prominent reputation for a junior scholar. It is a reputation for exceptional clarity of analysis, original research of great depth and sophistication, and compelling broader vision. Notably, Lynda's edited volume brings together the most important political science scholars currently working on the conservative turn in the federal courts regarding civil rights. This is an unusual accomplishment for a junior scholar; her colleagues' contributions to the volume are a testament to her reputation in the field.

We share a respect for Lynda Dodd as an important, thoughtful scholar. Her scholarship is richly researched, compellingly crafted, and of broad significance for our field. We encourage you to grant her promotion and tenure.

Sincerely,

Charles R. Epp
University Distinguished Professor
PhD Program Director
School of Public Affairs and Administration
University of Kansas


Judith Baer
Professor
Department of Political Science
Texas A&M University

Jeb Barnes
Professor
Department of Political Science
University of Southern California

Elizabeth Beaumont
Associate Professor & Director of Legal Studies
University of California-Santa Cruz

Pamela Brandwein
Professor
Department of Political Science
University of Michigan

2

PI. 003027 (Confidential)

Corey Brettschneider
Professor
Department of Political Science
Brown University

Susan Burgess
Professor
Department of Political Science
Ohio University

Thomas Burke
Professor
Department of Political Science
Wellesley College

Keith Bybee
Vice Dean and Paul E. and the Hon. Joanne F. Alper '72 Judiciary Studies Professor
College of Law
Professor of Political Science
Director, Institute for the Study of the Judiciary, Politics, and the Media
Maxwell School of Citizenship and Public Affairs
Syracuse University

Cornell Clayton
Thomas S. Foley Distinguished Professor of Government
School of Politics, Philosophy, and Public Affairs
Washington State University

Renee Ann Cramer
Professor and Chair
Law, Politics and Society
Drake University

Sue Davis
Professor Emerita
Department of Political Science & International Relations
University of Delaware

Yasmin Dawood
Associate Professor of Law and Political Science
Faculty of Law, University of Toronto

3

PI. 003028 (Confidential)

Judith Lynn Failer
Associate Professor, Political Science
Adjunct Associate Professor, Philosophy
Indiana University, Bloomington

James E. Fleming
The Honorable Paul J. Liacos Professor of Law
Boston University School of Law

Paul Frymer
Professor
Department of Politics
Director of the Program in Law and Public Affairs
Princeton University

Alison Gash
Associate Professor
Department of Political Science
University of Oregon

Leslie F. Goldstein
Judge Hugh M. Morris Professor, emeritus
Department of Political Science & International Relations
University of Delaware

Mark Graber
University System of Maryland Regents Professor
Francis King Carey School of Law
University of Maryland

Christine B. Harrington
Professor
New York University
Wilf Family Department of Politics
Law School, Affiliated Faculty

Gregg Ivers
Professor
Department of Government
American University

Robert A. Kagan
Professor Emeritus of Political Science and Law
University of California-Berkeley

4

Pl. 003029 (Confidential)

Thomas Moylan Keck
Michael O. Sawyer Chair of Constitutional Law and Politics
Maxwell School of Citizenship and Public Affairs
Syracuse University

Anna Kirkland
Arthur F. Thurnau Professor of Women's Studies
Director, Institute for Research on Women and Gender
Director, Science, Technology, and Society Program
University of Michigan

Herbert M. Kritzer
Marvin J. Sonosky Chair of Law and Public Policy
University of Minnesota School of Law

Anna Law
Associate Professor and Herb Kurz Chair in Constitutional Rights
Department of Political Science
Brooklyn College
City University of New York

Sanford Levinson
W. St. John Garwood and W. St. John Garwood, Jr. Centennial Chair in Law
University of Texas School of Law
& Department of Government
University of Texas

George I. Lovell
Harry Bridges Endowed Chair in Labor Studies
Chair of Political Science and Divisional Dean of Social Sciences
University of Washington

Michael W. McCann
Gordon Hirabayashi Professor for the Advancement of Citizenship
Department of Political Science
University of Washington

Kevin McMahon
John R. Reitemeyer Professor
Department of Political Science
Trinity College

Pl. 003030 (Confidential)

R. Shep Melnick
Thomas P. O'Neill, Jr. Professor of American Politics
Department of Political Science
Boston College

Mark C. Miller
Professor
Department of Political Science
Director of the Law and Society Program
Clark University

Julie Novkov
Chair, Department of Political Science
Professor of Political Science and Women's Studies
University at Albany, SUNY

Ruth O'Brien
The Graduate Center
City University of New York

Karen O'Connor
Jonathan N. Helfat Distinguished Professor
Department of Government
American University

Karen Orren
Distinguished Professor
Department of Political Science
University of California-Los Angeles

Douglas S. Reed
Professor
Department of Government
Georgetown University

Kim Lane Scheppele
Laurance S. Rockefeller Professor of Sociology and International Affairs
Woodrow Wilson School of Public & International Affairs
Princeton University

Gordon Silverstein
Assistant Dean for Graduate Programs
Yale University Law School

6

Rogers M. Smith
Christopher H. Browne Distinguished Professor of Political Science
Associate Dean for Social Sciences
University of Pennsylvania
President-Elect, American Political Science Association

Philippa Strum
Senior Scholar
Woodrow Wilson International Center for Scholars
City University of New York

Kathleen Sullivan
Associate Professor
Department of Political Science
Ohio University

Steven Teles
Associate Professor
Department of Political Science
Johns Hopkins University

Richard Valelly
Claude C. Smith '14 Professor
Department of Political Science
Swarthmore College

Justin Wert
Associate Professor and Associates Second Century Presidential Professor
Department of Political Science
University of Oklahoma

Keith E. Whittington
William Nelson Cromwell Professor of Politics
Department of Politics
Princeton University

David Alistair Yalof
Professor and Department Head
Department of Political Science
University of Connecticut

Pl. 003032 (Confidential)

Emily Zackin
Assistant Professor
Department of Political Science
Johns Hopkins University

Mariah Zeisberg
Associate Professor
Department of Political Science
University of Michigan

Michael Zuckert
Nancy R. Dreux Professor of Political Science
University of Notre Dame

8

Pl. 003033 (Confidential)