UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

LYNDA G. DODD,

                                  Plaintiff,

                -v-

CITY UNIVERSITY OF NEW YORK,
VINCENT BOUDREAU, BRUCE CRONIN,
and JOHN KRINSKY,

                                  Defendants.

17 Civ. 9932 (PAE)

OPINION &
ORDER

---

PAUL A. ENGELMAYER, District Judge:

This case concerns allegations by plaintiff Lynda G. Dodd that defendants, the City University of New York ("CUNY"), Vincent Boudreau, Bruce Cronin, and John Krinsky, participated in the retaliatory denial of her application for tenure and reappointment as a professor at CUNY. Trial on those claims is scheduled at the end of the month. This decision resolves a pending motion *in limine* filed by defendants, which principally seeks to preclude Dodd from presenting evidence of damages in the form of back pay to the jury at trial.[1] For the following reasons, the Court denies that motion.

I.     **Background**

The Court assumes familiarity with the extensive factual and procedural background of this case, which is set forth in detail in the Court's prior opinions. *See* Dkts. 38, 137. In resolving the instant motion, the Court recounts only the few facts necessary to understand the issues presented.

---

[1] The Court has, in a separate bench ruling, resolved the bulk of the parties' remaining motions *in limine*.

In 2010, soon after Dodd began her employment in the Political Science Department of City College of New York ("CCNY"), which is a constituent college of CUNY, she was diagnosed with muscular sclerosis ("MS"). Between 2010 and 2016, amid criticisms of the pace of her scholarship—some of which led to negative votes on her reappointment to CCNY's faculty—Dodd sought accommodations for the difficulties occasioned by her disability. According to Dodd, those efforts were rebuffed or stymied by various members of CCNY's administration and faculty. As a result, she filed several internal complaints of discrimination and retaliation against those individuals, including defendants Boudreau and Cronin, some of which led to findings in Dodd's favor, and others of which were found to have been unsubstantiated. These conflicts led, in June 2016, to a settlement agreement between Dodd, CCNY, CUNY, and Dodd's union. Under that agreement, Dodd gained, *inter alia*, reappointment for two years, and two more years in which to apply for tenure. In exchange, Dodd released all legal claims arising from pre-agreement events. Soon after, however, Dodd alleges that various individuals—including the individual defendants here—began to violate the agreement's terms, and to retaliate against her for her protected activities. This conduct, she alleges, culminated in the retaliatory denial of her application for tenure and reappointment in 2018, which terminated her employment at CUNY.

Dodd brings claims of retaliation under the Rehabilitation Act, 29 U.S.C. § 794(d) against CUNY; under the federal Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.* ("NYSHRL"), and New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.* ("NYCHRL"), against Boudreau; and under the NYSHRL and NYCHRL against Cronin and Krinsky. In October 2020, after discovery, the Court granted in part and denied in part defendants' motion for summary judgment. *See* Dkt. 137. The Court dismissed Dodd's claims under the NYSHRL and

NYCHRL against the other individual defendants, but sustained Dodd's claim against CUNY under the Rehabilitation Act, against Boudreau under the ADA, NYSHRL, and NYCHRL, and against Cronin and Krinsky under the NYSHRL and NYCHRL.

On April 9, 2021, the parties' filed motions *in limine*, including the one addressed by this decision. *See* Dkt. 171 ("Def. Mem."); *see also* Dkts. 155–56, 162–75. On May 7, 2021, the parties filed oppositions to those motions. *See* Dkt. 188 ("Dodd Mem."); *see also* Dkts. 182–90. On June 1, 2021, the Court held a pretrial conference, at which it resolved most of the parties' motions in a bench ruling. Trial is scheduled to begin on June 30, 2021.

## II. Discussion

Defendants seek to preclude Dodd from presenting her claims for back pay to the jury at trial.[2] As to Dodd's claim under the Rehabilitation Act, they argue that Dodd is not entitled to a jury verdict on this claim because back pay is an equitable, not a legal, remedy, and is thus not subject to the Seventh Amendment. As to Dodd's claim under the NYSHRL and NYCHRL, they concede that courts treat back pay under these statutes as legal relief under the Seventh Amendment. But they contend that such relief is unavailable against the individual defendants because CUNY (which is immune from suit under these laws), not the individual defendants, had responsibility for paying Dodd's salary. The Court first addresses the state and local laws, and then turns to the Rehabilitation Act.

---

[2] Defendants moved to exclude evidence of both back pay and front pay from the jury trial. *See* Def. Mem. at 2. In her opposition, Dodd has clarified that she does not intend to seek a jury verdict on front pay, only on back pay. *See* Dodd Mem. at 1 & n.1. Accordingly, the Court grants, as unopposed, defendants' motion as it relates to front pay. "Back pay consists of wages lost between the plaintiff's wrongful termination and the entry of the court's judgment. Front pay is wages lost between judgment and the plaintiff's reinstatement, or, if reinstatement is not feasible, it is a reasonable award of future lost earnings." *Gerstenbluth v. Credit Suisse Sec. (USA) LLC*, 728 F.3d 139, 143 n.6 (2d Cir. 2013) (citation omitted).

3

### A. Back Pay Under the NYSHRL and NYCHRL

As defendants concede, back pay is a legal remedy, as to which Dodd is entitled to a jury verdict, under the NYSHRL and NYCHRL. *See Tyler v. Bethlehem Steel Corp.*, 958 F.2d 1176, 1189 (2d Cir. 1992) (affirming jury verdict on lost wages because "all money damage awards under [the NYSHRL] are legal remedies"); *Chisholm v. Mem'l Sloan-Kettering Cancer Ctr.*, 824 F. Supp. 2d 573, 576 (S.D.N.Y. 2011) (collecting cases); *Sass v. MTA Bus Co.*, 6 F. Supp. 3d 238, 254 (E.D.N.Y. 2014) ("In light of the well-established principle that back pay, like all money damages, is considered to be a legal remedy under the NYSHRL, the Court treats back pay as a legal remedy under the parallel NYCHRL."); *see also* Def. Mem. at 3. It is also undisputed that both laws provide for individual liability—under the NYSHRL, for "employers" who retaliate against the plaintiff or those who aided and abetted an employer, and under the NYCHRL for anyone who participated in retaliation, even if not an "employer." *See, e.g.*, *Feingold v. New York*, 366 F.3d 138, 157–58 (2d Cir. 2004); *Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 366 (S.D.N.Y. 2012).

Defendants, however, contend that Dodd's claim for back pay against Boudreau, Cronin, and Krinsky under these laws cannot go to the jury. That is because, they argue, *these* defendants were not responsible for paying Dodd's salary, and thus cannot be liable for the salary she would have received had they not, as alleged, retaliated against her. On their view, only CUNY itself—against whom Dodd cannot assert NYSHRL or NYCHRL claims given its sovereign immunity—could, in theory, be liable for those damages, because it alone paid Dodd's salary. In support, they rely on authority holding as much in the context of § 1983 claims for back pay. *See Dwyer v. Regan*, 777 F.2d 825, 836 (2d Cir. 1985); *DeLoreto v. Ment*, 944 F. Supp. 1023, 1031 n.5 (D. Conn. 1996).

Under the NYSHRL and NYCHRL, however, courts have not limited back pay to those defendants who paid plaintiffs' salaries out of their own pockets. Rather, courts often impose joint and several liability under these statutes, reaching both the plaintiff's actual employer and the individual employees found to have acted against her. *See, e.g.*, *Garcia v. Comprehensive Ctr., LLC*, No. 17 Civ. 8970 (JPO) (BCM), 2019 WL 8274296, at *5, *12 (S.D.N.Y. Nov. 21, 2019), *report and recommendation adopted*, 2020 WL 1435002 (S.D.N.Y. Mar. 24, 2020); *Santiago v. Crown Heights Ctr. for Nursing & Rehab.*, No. 15 Civ. 4381 (DLI) (CLP), 2017 WL 4410807, at *4 (E.D.N.Y. Sept. 30, 2017); *DeCurtis v. Upward Bound Int'l, Inc.*, No. 09 Civ. 5378 (RJS), 2011 WL 4549412, at *3, *9 (S.D.N.Y. Sept. 27, 2011). That such liability may not extend to CUNY itself, given the procedural bar imposed by immunity, does not insulate the non-immune individual defendants from liability under these laws.

Thus, Dodd may present, to the jury, her claim for damages in the form of back pay, asserted under the NYSHRL and NYCHRL against Boudreau, Cronin, and Krinsky.

### B. Back Pay Under the Rehabilitation Act

Given the above, the jury necessarily will consider, should Dodd prevail on the merits of her claims, entitlement to back pay. Thus, the remaining question is only whether the jury could consider that evidence only with respect to the individual defendants, or also with respect to CUNY under the Rehabilitation Act. *See, e.g.*, *Morse v. JetBlue Airways Corp.*, No. 09 Civ. 5075 (KAM), 2014 WL 2587576, at *3 (E.D.N.Y. June 9, 2014) (collecting cases "where lost wages were considered an equitable remedy under federal law and a legal remedy under state law"). Defendants argue that it could not, because federal law treats back pay as an equitable remedy, not a legal remedy to which the Seventh Amendment applies. Dodd argues that the law defendants cite does not apply to her claims. The Court again holds with Dodd.

In support of their motion, defendants rely mostly on the Second Circuit's decision in *Broadnax v. City of New Haven*, which held, under Title VII, that "[b]ecause a lost wages award—whether in the form of back pay or front pay—is an equitable remedy, a party is generally not entitled to a jury determination on the question." 415 F.3d 265, 271 (2d Cir. 2005). *Broadnax*, in turn, relied on *Robinson v. Metro-North Commuter Railroad*, which similarly held that "[b]ecause back pay and front pay have historically been recognized as equitable relief under Title VII, neither party was entitled to a jury trial" on the issue. 267 F.3d 147, 157 (2d Cir. 2001). They also cite certain cases in this District applying those cases to claims against federal employers under the Rehabilitation Act. *See, e.g.*, *Shavuo v. Shinseki*, No. 10 Civ. 2914 (MEA), 2013 WL 1335645, at *5 (S.D.N.Y. Apr. 3, 2013); *Lupe v. Shinseki*, No. 10 Civ. 198 (MAD), 2012 WL 3685954, at *24 (N.D.N.Y. Aug. 24, 2012).

The Supreme Court, however, has rejected the notion that "backpay relief" under other causes of action "must . . . be considered equitable because this Court has labeled backpay awarded under Title VII, of the Civil Rights Act of 1964, . . . as equitable." *Chauffeurs, Teamsters & Helpers, Loc. No. 391 v. Terry*, 494 U.S. 558, 571 (1990). And although the Rehabilitation Act has expressly incorporated, in the provision applicable to *federal employers*, Title VII's remedies, the provision of the Act that applies to *recipients of federal funds*—like CUNY— incorporates a different provision of the Civil Rights Act: Title VI. *Compare, e.g.*, 29 U.S.C. § 794a(a)(1), *and Colon v. Potter*, 51 F. App'x 43, 46 (2d Cir. 2002) (summary order) ("The remedies . . . set forth in . . . Title VII apply to *federal employees* seeking relief for disability discrimination under the Rehabilitation Act." (emphasis added)), *with* 29 U.S.C. § 794a(a)(2) ("The remedies, procedures, and rights set forth in Title VI of the Civil Rights Act of 1964 . . . shall be available to any person aggrieved by . . . any recipient of Federal assistance . . . ."), *and*

*Consol Rail Corp. v. Darrone*, 465 U.S. 624, 631 (1984) (holding that § 794a(a)(2) "provides to plaintiffs . . . the remedies set forth in Title VI"). Title VI differs from Title VII in that the former authorizes "all traditional legal and equitable remedies," *Zaffino v. Surles*, No. 91 Civ. 1637 (MGC), 1995 WL 146207, at *2 (S.D.N.Y. Mar. 31, 1995) (collecting cases), whereas Title VII limits plaintiffs, in many cases, to equitable remedies, *see Landgraf v. USI Film Prod.*, 511 U.S. 244, 252–53 (1994). Under Title VI, and thus under § 794a(a)(2) of the Rehabilitation Act, the full range of compensatory damages are available. *See, e.g.*, *Moreno v. Consol. Rail Corp.*, 99 F.3d 782, 789 (6th Cir. 1996) ("Every circuit that has reached the issue after *Franklin* has held that compensatory damages are available under" the Rehabilitation Act. (citing *Franklin v. Gwinnett Cnty. Pub. Schs.*, 503 U.S. 60, 70 (1992)) (collecting cases)).

Thus, the question relevant here is not, as defendants have framed it, whether Title VII—and the provision of the Rehabilitation Act that incorporates its remedial provisions—treats back pay as an equitable remedy. It is whether Title VI, as incorporated in § 794a(a)(2) of the Rehabilitation Act, does so, and thus whether those provisions entitle Dodd to a jury trial or her claim for back pay. And on that question, Dodd is correct: they do.

Neither § 794a(a)(2) nor Title VI expressly grant plaintiffs the right to a jury trial, and neither speak directly of back pay; nor have the Supreme Court or Second Circuit addressed whether back pay under either statute is legal or equitable. Absent such sources of guidance, to determine whether the plaintiff is entitled to trial by jury, courts engage in a two-step inquiry. "First, we compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity. Second, we examine the remedy sought and determine whether it is legal or equitable in nature." *Terry*, 494 U.S. at 565 (citation omitted). "The second stage of this analysis is more important than the first." *Id.*

7

As to the first, courts have analogized damages under antidiscrimination laws to common-law actions like torts. *See, e.g.*, *Curtis v. Loether*, 415 U.S. 189, 197 & n.10 (1974) (holding that plaintiff seeking damages under Title VIII of the Civil Rights Act, *i.e.*, the Fair Housing Act, had right to jury trial and rejecting analogy to Title VII); *DeLeo v. City of Stamford*, 919 F. Supp. 70, 76 (D. Conn. 1995) ("[A]ctions under § 504 of the Rehabilitation Act are comparable to actions brought before courts of law in 18th-century England—namely, an action in tort to redress discrimination and an action for breach of an employment contract."); *see also Parker v. Universidad de P.R.*, 225 F.3d 1, 7 (1st Cir. 2000) (collecting cases); *Waldrop v. S. Co. Servs.*, 24 F.3d 152, 156 (11th Cir. 1994) ("As to the first prong, although there were no discrimination actions at common law, § 504's remedies appear comparable to actions brought before courts of law in 18th-century England.").

As to the second, Dodd's request for back pay—*i.e.*, the salary she would have received between her termination and any judgment here had she not been terminated and denied tenure—is plainly of a compensatory, legal nature. If Dodd prevails at trial, she may be entitled, as back pay, to the wages she would have received but for defendants' unlawful conduct. Such are, in effect, her damages (or at least a subset of them). And "[m]oney damages are, of course, the classic form of *legal* relief." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255 (1993) (collecting cases). Thus, courts considering whether the Seventh Amendment entitles a plaintiff to a jury verdict on claims for back pay under the Rehabilitation Act have largely held that it does, expressly rejecting comparisons to Title VII. *See, e.g.*, *Waldrop*, 24 F.3d at 156 & n.10 (holding, after thorough analysis, that "a back pay award" under the Rehabilitation Act "is clearly compensatory," and that the plaintiff was entitled to a jury trial on that issue because such award "grants [a plaintiff] the 'value' of the job for which she was wrongfully excluded"); *Pandazides v. Va.*

8

*Bd. of Educ.*, 13 F.3d 823, 832–33 (4th Cir. 1994) ("[A]n award in the amount of backpay," under the Rehabilitation Act, "would not be characterized as an equitable remedy.");³ *cf. Lorillard v. Pons*, 434 U.S. 575, 580–85 (1978) (plaintiff entitled to jury trial on claim for back pay under the Age Discrimination in Employment Act, which, unlike Title VII, provides for both "legal or equitable relief"); *Millsap v. McDonnell Douglas Corp.*, 368 F.3d 1246, 1252–53 (10th Cir. 2004) ("An award of backpay, without more, is therefore in the nature of compensatory damages," and not "equitable relief" under ERISA).

The Court thus holds that Dodd is entitled to a jury verdict on her claim for back pay against CUNY under the Rehabilitation Act, and will not preclude her from presenting evidence of such damages to the jury at trial.

## CONCLUSION

For the reasons above, defendants' motion to preclude jury consideration of back pay at trial is denied in full. The Clerk of Court is respectfully directed to terminate the motion pending at docket 170.

---

³ *Pandazides* considered, like *Terry*, a case in which the plaintiff sought back pay from a non-employer who had caused the plaintiff to lose her job. *See* 13 F.3d at 832. In *dicta*, the Fourth Circuit there noted that, although such damages were compensatory, and thus legal in nature, a similar suit against an employer, which would have been responsible for paying the lost wages, might sound more in restitution, and thus equity. *Id.* The Court finds that *dicta* unpersuasive. First, as *Waldrop* recognized, actions under the Rehabilitation Act for lost wages resulting from unlawful termination do not sound in unjust enrichment, such as when a defendant stands to reap a windfall profit. *See* 24 F.3d at 159. Nor would an award of back pay restore to Dodd the thing she lost—*i.e.*, her employment—as with a request for reinstatement. *Id.* & n.11; *see Crocker v. Piedmont Aviation, Inc.*, 49 F.3d 735, 747 (D.C. Cir. 1995) (making similar comparisons). Second, treating back pay against an employer as restitutionary, and therefore equitable, would impermissibly "collapse" the two notions. *Crocker*, 49 F.3d at 747, 749 (citing Douglas Laycock, *The Scope and Significance of Restitution*, 67 Tex. L. Rev. 1277, 1282 (1989) ("[R]estitution must be distinguished from compensation, either by its focus on restoration of the loss in kind or by its focus on defendant's gain as the measure of recovery.")).

SO ORDERED.

_Paul A. Engelmayer_
PAUL A. ENGELMAYER
United States District Judge

Dated: June 1, 2021
      New York, New York